UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RODA DRILLING, LP

CIVIL ACTION

VERSUS

NUMBER CV 11-379-BAJ-SCR

ENERGY XXI ONSHORE, LLC, ET AL.

### **NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, September 28, 2012.

*[signature: Stephen C. Riedlinger]*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


RODA DRILLING, LP

VERSUS

ENERGY XXI ONSHORE, LLC, ET AL.

CIVIL ACTION

NUMBER CV 11-379-BAJ-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court is the Reurged Rule 12(b)(6) Motion to Dismiss filed by plaintiff/defendant in counterclaim RoDa Drilling, L.P. and third party defendants, Zenergy, Inc. and Zeneco, Inc. (collectively, "RoDa parties"). Record document number 82. The motion is opposed.[1]

For the reasons which follow, the RoDa parties' motion should be denied.

**Background**

Plaintiff RoDa Drilling, L.P. filed this action against defendants Energy XXI Onshore, L.L.C. and McMoran Oil & Gas, L.L.C. (together, "the AMI parties") alleging that they breached an

---

[1] Record document numbers 85, McMoran's Memorandum in Opposition to the RoDa Defendants' Rule 12(b)(6) Motion to Dismiss, and record document number 87, Energy XXI Onshore, L.L.C.'s Response to the RoDa Defendants' 12(b)(6) Motion to Dismiss. The motion currently before the Court is a continuation of the arguments raised in The RoDa Defendants' Rule 12(b)(6) Motion to Dismiss. Record document number 35. Oppositions to this motion were filed by McMoran Oil & Gas, L.L.C. and Energy XXI Onshore, L.L.C. Record document numbers 50 and 49, respectively. RoDa filed a reply memorandum. Record document number 56. The arguments presented in all of the parties' memoranda have been considered for purpose of this magistrate judge's report.

Operating Agreement which governed the rights and obligations of the parties to the agreement with respect to certain lands, leasehold interests, and mineral interests within a geographical area in Louisiana referred to as the Area of Mutual Interest ("AMI"). Under the terms of the agreement an AMI party which acquires property interests within the AMI is required to offer the other AMI parties an option to participate in the interest if certain terms are met. The Operating Agreement specifically states:

> In the event any of the parties hereto, hereinafter sometimes referred to as the "Acquiring Party", hereafter acquires, either directly or indirectly, a leasehold interest, mineral interest or other interest in the production of oil, gas or other minerals with regard to lands within the AMI, including lessor's royalty, (except such interest as may be acquired pursuant to Article VIII.B hereof), said Acquiring Party shall give written notice of the acquisition to the other parties hereto within thirty (30) days after acquisition of said interests...Each of the non-acquiring parties shall have the option to participate in said acquisition and to bear its share of all acquisition costs, burdens, obligations, conditions, covenants, requirements and terms relating to such acquisition,... To the extent a lease covers acreage inside and outside the AMI, the portion situated outside the AMI shall be offered to the parties and this Operating Agreement shall be amended to include the acreage outside the AMI.[2]

Plaintiff alleged that the defendants acquired mineral leases and a lease option governed by the Operating Agreement but refused to give the plaintiff the option to participate in these property

---

[2] Record document number 1, Complaint for Breach of Contract and Declaratory Judgment, ¶ 8.

interests. Plaintiff sought specific performance of the contract, which would entitled it to an opportunity to participate in the specified leases and option along with any other unknown property interests acquired by the defendants that are wholly or partly within the AMI. Alternatively, the plaintiff requested damages resulting from the breach.

Plaintiff also sought a judgment declaring its obligations to the defendants concerning certain mineral rights leases sold by the State of Louisiana. Plaintiff alleged Zenergy, Inc. successfully bid on two state leases, Nos. 20597 and 20598, and subsequently assigned these interests to the plaintiff. Plaintiff sought a declaration that the land covered by lease No. 20598 does not fall within the AMI, and thus the defendants have no right to participate in the lease. Alternatively, the plaintiff asserted that the defendants' breach of the Operating Agreement negates any rights the defendants have to Lease 20598 unless the breach is cured.

Defendants filed counterclaims against the plaintiff alleging that it wrongfully acquired State Lease Nos. 20597 and 20598. Defendants also named Zenergy, Inc., Zeneco, Inc., and Robert Zinke as third party defendants.[3] Defendants alleged that RoDa, through its representative Robert Zinke, participated in discussions with

---

[3] Amended counterclaims were filed by defendants Energy XXI and McMoran. Record document numbers 52 and 73 (Energy XXI) and 78 (McMoran).

3

the AMI parties and subsequently agreed to allow McMoran to submit a joint bid on behalf of the AMI parties on Tract 42042, the tract of land which comprised the two state leases. Defendants claimed that upon McMoran's acquisition, the respective interests in the property would be offered to the AMI parties pursuant to the terms of the Operating Agreement. Defendants alleged that in their discussions the AMI parties decided on a set bid price which they believed would provide the highest probability for a successful bid. Defendants also alleged that the AMI parties agreed that if the single joint bid was accepted, the AMI would be expanded to include all the acreage of the tract.

Defendants alleged that Zenergy and Zeneco, whose sole officer is Zinke, bid on the tract at a higher price than McMoran's joint bid for the AMI parties. Defendants alleged that Zinke wrongfully disclosed to Zenergy and Zeneco trade secret information concerning McMoran's single joint bid for the Tract, including the bid amount. Zenergy submitted two bids for two separate potions of the tract: one portion wholly within the AMI, and one portion believed to be outside of the AMI. Zenergy's bids were successful. Zenergy subsequently assigned its interests in the leases to RoDa.

Defendants alleged that the lease with acreage which was believed to be outside of the AMI in fact is partly within the AMI. Defendants asserted that because both leases contain land within the AMI, they are entitled to an option to participate in the

4

leases.  Defendants also alleged that RoDa obtained certain top leases but failed to provide the defendants with an option to participate in these.

Defendants' counterclaim sought relief against RoDa for bad faith breach of contract and breach of implied obligation of good faith and fair dealing.  As to all the RoDa parties, the defendants asserted claims of unjust enrichment, unfair trade practices under Louisiana state law, misappropriation of trade secrets and confidential information, civil conspiracy, and conversion of trade secret information.  Defendants also sought a declaratory judgment concerning the property interests at issue in this matter.

The RoDa parties moved to dismiss the defendants' tort-based counterclaims.

**Applicable Law**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P. the Court "must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

5

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]—'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Rule 8(a)(2), Fed.R.Civ.P.). The court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." *Id*. at 1949-50 (internal quotation marks omitted).

The following law applies to the defendants' trade secret and unfair trade practice claims.

**Louisiana Uniform Trade Secrets Act**

Under the Louisiana Uniform Trade Secrets Act, LSA-R.S. § 51:1431 et seq. '"a complainant must prove (a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation."' *Computer Management Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000), *citing*, *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997). The statute defines a "trade secret" as information, including a formula, pattern,

6

compilation, program, device, method, technique, or process, that:

    (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

    (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

"Misappropriation" under statute is defined as:

    (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    (b) disclosure or use of a trade secret of another without express or implied consent by a person who:

        (i) used improper means to acquire knowledge of the trade secret; or

        (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

            (aa) derived from or through a person who had utilized improper means to acquire it;

            (bb) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

            (cc) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

        (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

LSA-R.S. § 51:1431(2).

**Louisiana Unfair Trade Practices and Consumer Protection Law**

The Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[4]  LSA-R.S. 51:1405(A).  LUTPA provides a private cause of action to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice...."  *Id*. § 1409(A).  The statute does not enumerate the sorts of conduct that constitutes unfair or deceptive methods, and allows the courts to make this determination on a case by case basis.  *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).  The Fifth Circuit has found these terms to include:

> a practice that is unethical, oppressive, unscrupulous, or substantially injurious to consumers; fraud, misrepresentation, deception, but not mere negligence; acts offensive to established public policy and immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; and acts have some element of fraud, misrepresentation, deception or other unethical conduct.

*Reingold v. Swiftships, Inc.*, 126 F.3d 645, 653 (5th Cir. 1997)(internal citations omitted).

---

[4] This statute is commonly referred to under its previous title, the Louisiana Unfair Trade Practices Act.

## Analysis

A review of the controlling law and the factual allegations in the defendants' counterclaims show that the defendants have stated plausible claims of relief against the RoDa parties. The RoDa parties originally relied on LSA-C.C. Art. 1839 and state court cases to show that the defendants' do not have a claim to Lease No. 20598 (believed to be outside of the AMI) because the defendants did not have a written agreement governing their rights to this property interest.[5] Defendants subsequently amended their counterclaims to allege that Lease No. 20598 is partially located within the AMI. Accepting this factual allegation, the Operating Agreement would be applicable to this lease, thus satisfying Louisiana's written requirement.

RoDa also argued that the defendants' breach of contract claim should dismissed because there was no written agreement to submit a joint bid on Tract 42042. However, the RoDa parties have not shown that Louisiana law requires such a bid agreement be reduced to writing. LSA-C.C. Art. 1839 is only applicable to situations involving the transfer of immovable property between parties.[6] In

---

[5] Under Louisiana law, the "transfer of immovable property must be made by authentic act or by act under private signature." LSA-C.C. Art. 1839.

[6] The factual allegations show that bid was to cover Tract 42042 as a whole. Thus, the proposed acquisition property would have been located partly within the AMI and subject to the Operating Agreement.

9

this case, the transfer of Tract 42042 would have been governed by the Operating Agreement had McMoran's joint bid been successful. The cases relied upon by the RoDa parties are distinguishable because they involved circumstances were no written agreement existed with respect to the joint venture as it related to immovable property.[7]  Because the parties in those cases did not have a written agreement for the ultimate transfer of property, their claims were dismissed.

Because the AMI parties have a written agreement concerning the transfer of property acquired within the AMI, dismissal of the defendants' breach of contract claim against RoDa is not warranted. The RoDa parties argument that the defendants do not have a breach of contract claim against Zenergy and Zeneco is also without merit because the defendants' have not alleged a breach of contract claim against these parties.

The RoDa parties have also failed to demonstrate that the defendants do not have an actionable tort claim against them. Defendants' tort claims are based on the RoDa parties' use of the information gained from AMI parties' discussions concerning their bid strategy on Tract 42042.  The RoDa parties' argument that the defendants must have written agreement, such as a confidentiality agreement, to support their tort claims based on trade secrets and

---

[7] *Ogden v. Ogden*, 93-1413 (La.App. 3rd Cir. 9/21/94) 643 So.2d 245; *Hayes v. Muller*, 158 So.2d 191 (La. 1963); and *Patterson v. Bloss*, 4 La. 374 (La. 1832).

10

unfair trade practices is legally unsupported. As discussed above Louisiana's in-writing requirement is only applicable when establishing the rights involved in a transfer of immovable property.

The cases cited by the defendants sufficiently demonstrate that an implied agreement of confidentiality is sufficient to establish a misappropriation of a trade secret.[8] Moreover, there is no language in LUTPA that requires some type of written agreement for purposes of establishing an unfair trade practice. The facts alleged concerning the AMI parties' relationship and the acts that transpired prior to the bid on Tract 42042 are sufficient to state a trade secret claim and an unfair trade practices claim.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Reurged Rule 12(b)(6) Motion to Dismiss filed by plaintiff/defendant in counterclaim RoDa Drilling, L.P. and third party defendants, Zenergy, Inc. And Zeneco, Inc. be denied.

Baton Rouge, Louisiana, September 28, 2012.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[8] See *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F.Supp.2d 521 (E.D.La. 4/11/2007); *B & G Crane Service, L.L.C. v. Duvic*, 2005-1798 (La.App.1 Cir. 5/5/06) 935 So.2d 164.

11